**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES and PAMELA FOEHRKALB, | ) | No. 07-31309 |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

This case is before the Court on two of the Chapter 13 Trustee's (TRUSTEE) objections to confirmation of James and Pamela Foehrkalb's (DEBTORS) proposed Chapter 13 plan. The DEBTORS filed their petition for relief under Chapter 13 on June 30, 2007. On Schedule B, the DEBTORS value a 2006 Pontiac Torrent at $16,195. On Schedule D, the DEBTORS show that they owe $22,640 on the Torrent. Claim #6-1, filed by Fifth Third Bank (LIENHOLDER) on July 25, 2007, shows a total owed of $22,832.10. After the TRUSTEE filed his objection to confirmation, the DEBTORS amended Schedule C to claim an exemption of $2,650 in the Torrent using their wildcard exemption. The DEBTORS also have two other vehicles, a 1998 Ford Contour valued at $1,500 and a 2000 Pontiac Grand Am valued at $4,000. Both of these vehicles are unencumbered. On amended Schedule C, the DEBTORS claim the $1,500 value of the Ford Contour as exempt under their wildcard exemption and the $4,000 value of the Pontiac Grand Am as exempt under their vehicle exemption. The DEBTORS scheduled $40,256.43 in unsecured debt.

According to their proposed Chapter 13 plan, the DEBTORS will make monthly payments of $580.20 per month for 60 months.[1] The proposed plan further provides that the TRUSTEE will make adequate protection payments to the LIENHOLDER on the Torrent, in the amount of $130 per month for the first six months of the plan. Beginning with the seventh month, the proposed plan

---

[1] According to Form 22C, DEBTORS' income is below median, and thus they are not subject to the new disposable income test under Bankruptcy Abuse Prevention and Consumer Protection Act.

provides for the TRUSTEE to pay the LIENHOLDER $491.44 per month for the remainder of the plan term.  The proposed plan also proposes to pay a minimum of $1,000 to the unsecured creditors over the life of the plan.

The TRUSTEE'S written objection states that the plan does not meet the "best interests" test of § 1325(a)(4) of the Bankruptcy Code, 11 U.S.C. § 1325(a)(4).  The main focus of the TRUSTEE'S objection is the DEBTORS' retention of the Torrent.  During the hearing on the objection, the TRUSTEE argued that the Torrent was not a "reasonably necessary" expense under § 1325(b) of the Bankruptcy Code, 11 U.S.C. § 1325(b) and Judge Meyers' holding in *In re Rybicki*, 138 B.R. 225 (Bankr.S.D.Ill. 1992).  The TRUSTEE seeks to have the total amount that would be paid on the Torrent over the life of the plan ($27,317) paid to the unsecured creditors, asserting that the DEBTORS' retention of the Torrent does not satisfy the requirements of § 1325 or of *Rybicki*.

As Judge Meyers in *Rybicki* points out:

> Although § 1325(a)(4) requires that unsecured creditors receive no less than they would have received under Chapter 7, 11 U.S.C. § 1325(a)(4), § 1325(b) is a separate requirement with which debtors must also comply.  *In re Willingham,* 83 B.R. 552, 553-54 (Bankr.S.D.Ill. 1988); *Reyes,* 106 B.R. at 158.

*Rybicki,* 138 B.R. at 228.  Therefore, this Court will first address these two separate requirements.

For a plan to be confirmable, § 1325(a)(4) provides, in part, as follows:

> The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

Using the DEBTORS' figures from their schedules, this Court cannot conclude that creditors would get more in a Chapter 7 case.  The Ford Contour and the Pontiac Grand Am are both claimed as exempt.  The Pontiac Torrent is valued at $16,195 and $22,640[2] is owed on it.  Thus, the

---

[2] The LIENHOLDER is claiming $22,832.10.

LIENHOLDER is undersecured by at least $6,445.  So there would be no equity for unsecured creditors in a Chapter 7 case, and the TRUSTEE'S objection under § 1325(a)(4) must be denied.

Turning to § 1325(b), it provides that the Court may not confirm a Chapter 13 plan over objection unless:

* * *

> (B)  the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
>
> (A)(i)  for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed....

At the hearing the DEBTORS argued that they needed three cars because there are three drivers in the household.  The wife and the son, who is a student and apparently does not work, drive the unencumbered vehicles, and the husband drives the Torrent.  The DEBTORS also argued that if they are forced to give up the Torrent, the husband would still need some type of transportation.  The DEBTORS also pointed out that this is the only car payment they have, and the vehicle is not a luxury type vehicle.  The TRUSTEE did not dispute these factual assertions or present any evidence upon which this Court could rely to come to a conclusion that paying for the Torrent, so as to provide a third vehicle for a third driver, is an unreasonable expense.  As the payments for the Torrent constitute an expense reasonably necessary for the maintenance of the DEBTORS and their dependent son, the TRUSTEE'S objection under § 1325(b) must be denied.

Lastly, this Court will address the TRUSTEE'S argument based on *Rybicki*.  In *Rybicki*, the trustee objected to confirmation of the debtors' plan, asserting that a debt owed by the debtors for

a travel trailer (camper) was not a reasonably necessary living expense under § 1325(b). The debtors' secured debts included a debt for the trailer, which apparently would be paid through the Chapter 13 plan. The plan provided that unsecured creditors would receive 10% of their allowed claims. According to the court, the fair market value of the trailer exceeded the amount the debtors still owed on it.

In response, the debtors argued that they had fulfilled the disposable income requirement because they did not list the monthly payment for the travel trailer in their schedule of expenses and therefore any payments made on behalf of the trailer were not considered in their disposable income calculation. They further argued that only post-petition debts were subject to scrutiny under § 1325(b).

Judge Meyers rejected the debtors' arguments and held that: (1) both projected postpetition expenses and prepetition secured debts are subject to scrutiny under the disposable income test of § 1325; and (2) the debtors had not contended or shown that the trailer was a reasonably necessary expense as required by § 1325(b). Judge Meyers also stated:

> An additional factor, although not dispositive of the issue before the Court, concerns the difference in the amount the debtors could pay on the balance owed the unsecured creditors if the debtors surrendered the camper. If the debtors exclude the debt on the camper from their plan and relinquish the collateral, they could put at least another $4,644.20, the amount they would have paid on the camper through the plan, towards their unsecured debts, thereby paying approximately 96% of those debts or at least substantially more than the 10% they now propose to pay on those debts. "A fundamental purpose of the disposable income provision is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims." *Hedges*, 68 B.R. at 20. The percentage the debtors could pay toward the unsecured claims would rise substantially if they did not make payments on the camper, even though they owe a relatively small amount on the camper. Therefore, applying the disposable income provision in this instance fulfills the purpose of the statute.

*Rybicki,* 138 B.R. at 229.

It is this additional factor that the TRUSTEE is relying upon in the present case – that the unsecured creditors will receive a larger dividend if the DEBTORS surrender the Torrent and the money that would have been paid to the LIENHOLDER on the Torrent car loan is applied instead to pay unsecured creditors. The TRUSTEE asserts that it is "unfair" to the unsecured creditors to allow the DEBTORS to keep all three vehicles and allow them to "walk away" from over $40,000 in unsecured debt. He asserts it would be in the best interests of unsecured creditors if the Torrent were surrendered to the lien creditor, freeing up $27,317 to be paid to unsecured creditors in addition to the $1,000 going to them under the proposed plan.[3]

The TRUSTEE'S reliance on *Rybicki* is misplaced because Judge Meyers in *Rybicki* was concerned that paying for a non-essential item would reduce the amount going to unsecured creditors. This is not the situation in the present case as this Court has found the third vehicle to be essential [reasonably necessary] to the DEBTORS and their dependent son.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

ENTERED: November 13, 2007

                                                                          /s/ William V. Altenberger  
                                                        UNITED STATES BANKRUPTCY JUDGE

---

[3] As this part of his argument, the TRUSTEE is using the term "best interests" of unsecured creditors in a general sense and not in its technical meaning under § 1325(a) which compares total distribution under a Chapter 7 case to total distribution under a Chapter 13 case.